## SWEARINGEN *v.* BULGER & SON.

### Opinion delivered April 12, 1915.

1. CONTRACTS—CONTRACT OF AGENT—LIABILITY.—A church corporation authorized its building committee to procure architect's plans and specifications for a building not to exceed a certain sum in cost. *Held,* when the committee entered into a contract with appellee architect for plans and specifications covering a building of an estimated cost far in excess of the amount authorized the church will not be liable on the same.

2. CONTRACTS—AGENCY—CONTRACT IN EXCESS OF AUTHORITY—LIABILITY OF AGENT.—Appellants as agents for a religious corporation, entered into a contract with appellees for work in excess of the authority conferred by the corporation. In an action against the appellants personally on the contract; *held,* it was error to instruct the jury that they were personally liable, without submitting to the jury the issue of whether appellees knew that appellants were exceeding their authority, when there was no personal undertaking on the part of the appellants.

3. PRINCIPAL AND AGENT—EXCEEDED AUTHORITY—LIABILITY OF AGENT.— If the party with whom an agent deals has full knowledge of the lack of authority of the agent, and there is no express undertaking on the part of the agent to make himself personally liable, he does not become liable merely because of the fact that he exceeds his authority.

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; reversed.

*A. J. Murphy,* for appellants.

*C. Floyd Huff,* for appellees.

McCULLOCH, C. J. Hot Springs Baptist Church (incorporated), of the city of Hot Springs, Arkansas, decided to build a new church edifice in April, 1908, and through its pastor began negotiations with appellees, a firm of architects in the city of Dallas, Texas, for the preparations of plans and specifications. Appellants and certain other members of the church were appointed as a building committee with authority to make contracts, but the authority was limited to that of forming plans and building a church not to cost exceeding the sum of $50,000. The pastor of the church was *ex-officio* a member of the committee, and was the most active member, most of the negotiations with appellees being conducted through him. A contract was finally entered into with appellees for preparation of the plans and specifications, the compensation to be 3 per cent on the estimated cost of the building, or $1,500, payable in three equal installments, the first of which was paid. Appellees prepared plans and specifications and delivered them to the committee, and this is an action to recover the sum of $1,000, and interest thereon, balance due on the price agreed to be paid. Appellants, as members of the committee, and the church itself were sued jointly. The church defended on the ground that it had given no authority to make a contract for the construction of a church in excess of the cost of the sum of $50,000, and appellants defended on the ground that they made no contract to bind themselves individually but acted only as agents of the church and were not personally liable. The trial of the case resulted in a verdict in favor of the church but against appellants, as members of the building committee, for the amount of the balance due under the contract.

(1.) It is not contended that appellants entered into any contract except in their representative capacity for the benefit and in the name of the church, but recovery against them was sought alone upon the theory that they exceeded their authority. It is undisputed that the plans and specifications were for a church of an esti-

mated cost far in excess of the sum of $50,000, and that the church itself is not liable on account of the lack of authority to bind it to the contract which was in fact made with appellees. The court properly submitted, in instructions requested by appellees, the question of the nonliability of the church if its authority had been exceeded. The instructions told the jury that if ''said building committee exceeded its authority and did contract with plaintiff for plans for a building to exceed in cost $50,000,'' the church would not be liable. The jury found in favor of the church, and we must treat the issue settled that the church is not liable because of the fact that it had not authorized the committee to enter into a contract for the preparation of plans in excess of the cost named above.

The court gave the following instruction, over the objection of appellants:

''3. The court instructs the jury that even though you may believe from the evidence that the defendants had no authority to contract with plaintiffs for plans for a building to cost exceeding $50,000, and that in fact the building provided for by the plans could not be built for $50,000, and the committee had full knowledge of this fact before it made such agreement, yet if you further find from the evidence that a settlement was reached by said parties by an agreement to pay $500 by March 1, 1910, and the balance of $1,000 within two years thereafter, then you will find for the plaintiffs in the sum of $1,000 with 6 per cent interest from the 10th day of February, 1912, as against the defendants composing the building committee.''

(2.) We are of the opinion that that instruction contained an incorrect statement of the law which calls for a reversal of the judgment. The effect of the instruction was to tell the jury that appellants would be liable merely because they entered into an agreement to pay for the plans with knowledge that the contract exceeded the authority extended to them, and entirely ignored the

question of knowledge on the part of appellees themselves. In that respect it was in conflict with the first instruction given by the court at the request of appellees. Notwithstanding the fact that the contract exceeded the authority, if appellees had knowledge of the fact, and there was no personal undertaking on the part of appellants, they did not become liable. This is true, also, concerning the question of ratification, for if appellees possessed knowledge of the fact that appellants had exceeded the authority actually conferred upon them by their principal, ratification by payment of a portion of the agreed price did not render appellants personally responsible. On the contrary, any payment made by the church, with knowledge of the fact that the authority conferred had been exceeded, constituted ratification which relieved appellants from existing personal liability by reason of having exceeded the authority of their principal without the knowledge of appellees. This results from the fact that the principal and agent can not both be liable on the contract, and if the former is liable the latter is not. So in any view of the above instruction, it was incorrect in ignoring the question of knowledge on the part of appellees that appellants had exceeded the authority conferred on them by their principal.

(3.) In the case of *Rittenhouse* v. *Bell,* 106 Ark. 315, we had occasion to lay down the law generally as to the personal liability of an agent who contracts in excess of the authority delegated to him by his principal. There are, however, many limitations upon that general rule, and one of them is that if the party with whom the agent deals has full knowledge of the lack of authority, and there is no express undertaking on the part of the agent to make himself personally liable, he does not become liable merely because of the fact that he exceeds his authority. The law on that subject is stated as follows:

"The above rules in respect to an agent's liability for entering into a contract on behalf of an assumed principal apply, however, only where the third party has acted

in good faith and has been induced or misled into enter-
ing into the contract by the agent's express or implied
representations as to authority. In order that such party
may hold the agent liable for damages, it is necessary
that he should have been *bona fide* ignorant of the extent
of the agent's authority. If he knows, or has knowledge
sufficient to put him on inquiry, of the facts and circum-
stances surrounding the agency, and he fails to make use
of such knowledge or to make such inquiry, it can not be
said that he has been induced or misled into the contract
by the agent's express or implied representations, and
he can not hold the agent responsible for any injury he
may have suffered thereby, unless the agent has con-
cealed or misrepresented material facts to his injury.
Hence, where an agent, at the time he enters into the con-
tract, *bona fide* discloses to the other party all the facts
and circumstances in the case, in reference to the author-
ity which he claims to have, such party can not say that
he has been misled, so as to hold the agent liable for any
damage he may have incurred." 2 Clark & Skyles on
Agency, § 582.

There are many decisions on that subject and the
law is well settled. The Kentucky Court of Appeals, in
the case of *Sandford* v. *McArthur,* 18 B. Monroe, 411,
said: "It is a general principle that where a person
undertakes to do an act as an agent of another, and ex-
ceeds the authority delegated to him, he will be personally
responsible therefor to the person with whom he is deal-
ing; but this liability is founded upon the supposition
that the want of authority is unknown to the other party."

The late Justice Brewer, speaking for the Supreme
Court of Kansas in the case of *Abeles* v. *Cochran,* 22 Kan.
405, after reviewing the authorities on the subject, said:
"The doctrine is clear that where the contract is made in
the name of the principal, and without any personal cove-
nant on the part of the agent, and without any wrong on
his part, either in act, statement or omission, the latter
is not responsible, even though the former be not bound."

In delivering the opinion of the court in *Newport* v. *Smith*, 61 Minn. 277, Judge Mitchell said: "The ground and form of the professed agent's liability in such cases has been the subject of discussion, but all the authorities are agreed that he is liable in damages to the person dealing with him upon the faith that he possessed the authority assumed. * * * But in whatever phase the question has arisen, or whatever diverse views the courts may entertain as to the precise ground of the liability or form of the remedy, all the authorities are agreed that, to give a party a legal remedy against the professed agent, he must have been ignorant of the want of authority, and have acted upon the faith of the representations, express or implied, that the professed agent had the authority assumed. Hence, the law is that when the professed agent, acting in good faith, fully discloses to the other party, at the time, all the facts and circumstances touching the authority under which he assumes to act, so that the other party, from such information or otherwise, is fully informed as to the existence and extent of his authority, he can not be held liable."

The Supreme Court of Connecticut, in a well considered case, had this to say on the subject: "It does not follow that an agent, acting either in a public or private capacity, is of necessity made personally liable, although he does not give a cause of action against some one else. We believe the law to be, that if a person assumes to act and enter into contracts in the name of another as his principal, and does this with an honest intent, openly and fully disclosing all the facts touching his supposed authority, or which may be fairly implied from his situation, and especially if he provides against his personal liability, in any event he can not be held liable unless he be guilty of fraud or false representation." *Ogden* v. *Raymond*, 22 Conn. 379.

There are many other decisions to the same effect. *Halbot* v. *Lens* (1901), 1 Ch. 344; *Smout* v. *Ilbery*, 10 M. & W. 1; *Newman* v. *Sylvester*, 42 Ind. 106; *Ware* v. *Mor-*

*gan,* 67 Ala. 461; *Hall* v. *Lauderdale,* 46 N. Y. 70; *Western Cement Co.* v. *Jones,* 8 Mo. App. 373; *Humphrey* v. *Jones,* 71 Mo. 62; *Michael* v. *Jones,* 84 Mo. 578.

Now, in the face of the well-established principles of law above announced, the court in this case gave an instruction which permitted the appellees to recover of appellants, as agents, notwithstanding appellees' complete knowledge of all the facts and lack of authority, if there was such lack of authority. The evidence is abundant, even if it can not be said to be undisputed, that appellees had full knowledge of the fact of the limitations upon the authority of the committee, and dealt with the latter accordingly. That being true, the committee was not personally liable, not having assumed any expressed personal liability in entering into the contract.

For the error in giving the instruction referred to, the judgment is reversed and the cause remanded for a new trial.